# *United States Court of Appeals*
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

July 14, 2021

Mr. Tony R. Moore
Western District of Louisiana, Alexandria
United States District Court
300 Fannin Street
Suite 1167
Shreveport, LA 71101-0000

     No. 20-30306   Dean v. Akal Security
                USDC No. 1:17-CV-543

Dear Mr. Moore,

Enclosed is a copy of the judgment issued as the mandate and a copy of the court's opinion.

Enclosed for the district court and counsel is the approved bill of costs.

                    Sincerely,

                    LYLE W. CAYCE, Clerk

                    By: _____
                    Majella A. Sutton, Deputy Clerk
                    504-310-7680

cc:
     Ms. Valerie L. Hooker
     Mr. Tony H. Mcgrath
     Mrs. Jenna Rinehart Rassif
     Mr. Matthew Seth Sarelson
     Mr. Charles Frederick Seemann III
     Mr. James Edward Sudduth III



# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 22, 2021

Certified as a true copy and issued
as the mandate on Jul 14, 2021

Attest: *Lyle W. Cayce*

Clerk, U.S. Court of Appeals, Fifth Circuit

No. 20-30306

Lyle W. Cayce
Clerk

HAYWARD DEAN, INDIVIDUALLY AND ALL OTHERS SIMILARLY
SITUATED; BRUCE DUPONT; GARY L. CARLTON; RUTH
MAYEAUX; GREGORY LAWRENCE SERGENT; GREGORY
WILLIAMS, ET AL;

*Plaintiffs—Appellants*,

*versus*

AKAL SECURITY, INCORPORATED,

*Defendant—Appellee*.

───────────────────────────────

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:17-CV-543

───────────────────────────────

Before HIGGINBOTHAM, SOUTHWICK, and ENGELHARDT, *Circuit
Judges*.

## J U D G M E N T

This cause was considered on the record on appeal and was argued by
counsel.

IT IS ORDERED and ADJUDGED that the judgment of the
District Court is AFFIRMED.

IT IS FURTHER ORDERED that plaintiffs-appellants pay to defendant-appellee the costs on appeal to be taxed by the Clerk of this Court.

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 22, 2021

Lyle W. Cayce
Clerk

No. 20-30306

---

HAYWARD DEAN, *individually and all others similarly situated*; BRUCE DUPONT; GARY L. CARLTON; RUTH MAYEAUX; GREGORY LAWRENCE SERGENT; GREGORY WILLIAMS, ET AL.;

>                                                      *Plaintiffs—Appellants,*

>             *versus*

AKAL SECURITY, INCORPORATED,

>                                                      *Defendant—Appellee.*

---

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:17-CV-543

---

Before HIGGINBOTHAM, SOUTHWICK, and ENGELHARDT, *Circuit Judges.*

LESLIE H. SOUTHWICK, *Circuit Judge:*

The federal government contracted with a security company to monitor detainees during air travel. Specifically at issue here are return flights after deportees were taken to a foreign country. Some of the security company's employees challenged the company's meal-period policy. That policy automatically deducted an hour of pay on return flights that exceeded 90 minutes and had no deportees. The employees argue that this policy

No. 20-30306

violated the Fair Labor Standards Act.  The district court granted summary judgment for the company.  We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

The United States Immigration and Customs Enforcement agency ("ICE") contracted with Akal Security, Inc., to provide certain personnel for flights, including those carrying deportees to another country.  Akal lost this contract sometime in December 2017, several months after the named plaintiff filed his original complaint.  The plaintiffs no longer work for Akal, but they continue to press their challenge to the meal-period policy that existed during their employment as Aviation Security Officers ("ASOs") with Akal.

Akal hired ASOs to control deportees and to respond to their needs on these flights.  The ASOs' responsibilities ranged from monitoring the deportees to coordinating deportees' trips to the restroom.  Though there were pilots and flight attendants on each flight, these individuals were not Akal employees.  The ASOs were nonexempt, hourly employees as defined under the Fair Labor Standards Act ("FLSA").

The dispute before us concerns Akal's meal-period policy for the return-flight portion of ICE missions.  The policy was this:

> There is a mandatory un-paid 1 hour meal period on each shift. This affects all Aviation Security Officers ("ASOs") and Leads operating out of Mesa, AZ, San Antonio, TX, Alexandria, LA and Miami, FL.  This meal period will be taken by all ASOs and Leads on the return leg of each mission. Exceptions to this rule are the following:
>
> •A mission on which there are detainees on-board for the return leg of the trip; there will be no un-paid meal period and ASOs will be paid for the entire mission.

No. 20-30306

> • If the return leg of a mission is shorter than 90 minutes, there will be no un-paid meal period and ASOs will be paid for the entire mission.

> The "return leg" is defined as the last leg of the mission prior to arriving at the point of origin during which there are no detainees on board and no security duties are required. During this un-paid meal period, ASOs and Leads will be expected to disengage from work duties and may use their time as they wish. As this meal period will be taken in the workplace, professional conduct must be maintained and any violations of company policy will not be tolerated.

Though Akal's policy covered both domestic and international flights, the plaintiff ASOs challenged the operation of the policy on flights of 90 minutes or more returning to the United States after deportations had been completed.

ASOs across the country have brought individual suits and class actions against Akal, contesting the legality of the meal-period policy.[1] The argument is that Akal violated the FLSA by not paying the required minimum wage during this one-hour break because those periods either were compensable travel time or did not qualify as a *bona fide* meal period.

The appellants here are ASOs in San Antonio, Texas, and Alexandria, Louisiana. They claimed two FLSA violations: (1) that the meal-period

---

[1] Two other federal circuits have heard related cases. A panel in the Ninth Circuit found in favor of Akal, holding that the employee in that appeal did not dispute that he was relieved of duty during the one-hour break, thus "fail[ing] to raise a triable issue as to whether Akal is liable for violating the FLSA." *Alonzo v. Akal Sec. Inc.*, 807 F. App'x 718, 720 (9th Cir. 2020). The Eleventh Circuit heard oral arguments in January 2021, after a district court found as a matter of law that the ASOs were not completely relieved of duty and granted judgment in their favor. *Gelber v. Akal Sec., Inc.*, No. 18-14496 (11th Cir. argued Jan. 15, 2021). These circuits, though, may not apply the same analysis when identifying whether a *bona fide* meal period occurred, which we will discuss later.

No. 20-30306

policy violated the FLSA because the ASOs were entitled to additional minimum-wage pay, and (2) that Akal violated the FLSA by not paying the ASOs' required overtime wages.  The district court granted conditional class certification, then later dismissed the minimum-wage claim.  The ASOs have not appealed the dismissal of the minimum-wage claim.

Akal sought summary judgment on the remainder of the case, and the district court granted the motion.  It concluded that the ASOs "fail[ed] to rebut the affirmative showing made by Akal regarding both relief from work-related duties and the lack of interruption of [the ASOs'] meal breaks due to such duties."  The ASOs appealed.

## DISCUSSION

We review a grant of summary judgment *de novo*, "applying the same standard as the district court."  *Satterfield & Pontikes Constr., Inc. v. U.S. Fire Ins. Co.*, 898 F.3d 574, 578 (5th Cir. 2018).  There must be "no genuine dispute as to any material fact" for a proper grant of summary judgment. Fed. R. Civ. P. 56(a).  When reviewing the parties' evidence, we make all inferences in favor of the nonmoving party; here, the ASOs.  *Salazar v. Lubbock Cnty. Hosp. Dist.*, 982 F.3d 386, 388 (5th Cir. 2020).

The claim here is for a violation of the FLSA.  Under that Act, nonexempt employees engaged in commerce are to be paid a minimum wage for all hours worked.  29 U.S.C. § 206(a).  Any hour worked over 40 hours in a workweek must be paid at "a rate not less than one and one-half times the regular rate at which the employee is employed."  § 207(a)(1).  This framework sets the stage for the ASOs' appeal, as they seek overtime pay for

No. 20-30306

those meal periods that contributed to more than 40 hours worked in a given week.[2]

The Department of Labor ("DOL") regulations relevant here are those that establish "the principles involved in determining what constitutes working time." 29 C.F.R. § 785.1. We will defer to DOL regulations concerning the FLSA when they are "based on a permissible construction of the statute." *Vela v. City of Hous.*, 276 F.3d 659, 667 (5th Cir. 2001) (quoting *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984)).

We group the ASOs' arguments into two categories, though there will be some overlap. First, we consider whether the entire return flight must be compensable travel time, which largely but not entirely is an argument that an uncompensated meal period cannot occur on these flights. Second, we apply this circuit's predominant-benefit test to the one-hour breaks that the ASOs received to determine if a valid, uncompensated meal period occurred.

I.    *Compensable travel time*

Our obligation in this appeal is to apply this simple regulatory sentence: "*Bona fide* meal periods are not worktime." 29 C.F.R. § 785.19(a). The DOL gives us much more guidance than that sentence, but we wish to set our course with that clear goal in mind.

The ASOs argue that the entire return flight was compensable. Because Akal compensated the ASOs for all but one hour of the empty return flights, the critical question is whether an employee, while engaged in otherwise compensable air travel, can be subject to a *bona fide* meal period.

---

[2] Akal acknowledges "that [if] the meal period is compensable, there is no dispute that the parties could easily calculate the number of alleged overtime hours that were unpaid by a review of Akal's records."

Case 1:17-cv-00543-DDD-JPM   Document 256   Filed 07/14/21   Page 9 of 21 PageID #:  4734
Case: 20-30306      Document: 00515936755      Page: 6      Date Filed: 07/14/2021

No. 20-30306

There are travel regulations that mention excluded meal periods, and there are others that do not. We review the regulatory scheme as a whole when applying the DOL's interpretations of travel time and meal periods. *See Exelon Wind 1, L.L.C. v. Nelson*, 766 F.3d 380, 399–400 (5th Cir. 2014).

No DOL regulation prohibits a *bona fide* meal period during travel. When overnight travel is required of employees, "[r]egular meal period time is not counted" as hours worked. 29 C.F.R. § 785.39. Salient, but of contested application, is a regulation that Akal argues is directly on point because it discusses meal periods on airplanes. The ASOs argue it is irrelevant because they were not the kinds of employees within the coverage of the regulation. That regulation reads:

> Any work which an employee is required to perform while traveling must, of course, be counted as hours worked. An employee who drives a truck, bus, automobile, boat or airplane, or an employee who is required to ride therein as an assistant or helper, is working while riding, except during *bona fide* meal periods or when he is permitted to sleep in adequate facilities furnished by the employer.

§ 785.41. Akal insists the ASOs were required to "ride" in the airplane, but the rebuttal is that an ASO was not an "assistant or helper" to the "driver." One perspective on meaning is that a pilot could not handle all that was necessary in these flights without considerable help. Still, we conclude the appeal can be decided without applying that regulation.

One regulation on which the ASOs rely states that "[t]ime spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked." § 785.38. This regulation prohibits a noncompensable meal period, the ASOs argue, because they were required to return on the airplanes, and they had additional duties required of them upon landing at their home base. Akal

No. 20-30306

does not dispute those facts, but it certainly has a different view of their significance.[3]

In support of their interpretation of Section 785.38, the ASOs discuss an unpublished Eleventh Circuit opinion. *Burton v. Hillsborough Cnty.*, 181 F. App'x 829 (11th Cir. 2006).  The panel of that court held that county employees who were required to pick up and return county-owned vehicles that contained the necessary work tools for that day had compensable travel time retrieving and returning the county-owned vehicles pursuant to Section 785.38.  *Id.* at 837–38.  A district court in this circuit also held that, under Section 785.38, return travel time to a landscaping company's home base to conduct additional work constituted compensable time.  *Cantu v. Milberger Landscaping, Inc.*, 12 F. Supp. 3d 918, 922–23 (W.D. Tex. 2014).  We need not determine our agreement with either analysis because even if those holdings are correct, neither considered a meal period during the travel.[4]  Further, we do not see in Section 785.38 either approval or a bar to a meal period.

The ASOs next propose that any downtime during the return flights was compensable.  Under Section 785.21: "[a]n employee who is required to be on duty for less than 24 hours is working even though he is permitted to sleep or engage in other personal activities when not busy."  Additionally, under Section 778.223, idle hours may be compensable when the employee is required to remain on duty.  Relatedly, the Supreme Court has allowed

---

[3] Akal states, in a footnote, that the ASOs were not "traveling" as the term is meant in the FLSA.  There is no significant argument about that point of definition, and we do not need to address it.

[4] A judge for a Northern District of Alabama case held: "Travel time does not include a *bona fide* meal period" under Section 785.38.  *Hilley v. Tacala, L.L.C.*, No. 2:12-CV-2691, 2014 WL 1246364, at *17 (N.D. Ala. Mar. 24, 2014).  We cite that here as one opinion that analyzed meal periods specifically in connection with travel.

Case 1:17-cv-00543-DDD-JPM   Document 256   Filed 07/14/21   Page 11 of 21 PageID #: 4736
Case: 20-30306      Document: 00515936755      Page: 8      Date Filed: 07/14/2021

No. 20-30306

certain inactive time to be compensable. *See Armour & Co. v. Wantock*, 323 U.S. 126, 134 (1944). The *Armour* Court held that the FLSA mandated compensation, even though "the nature of the duty left time hanging heavy on the employees' hands." *Id.* In *Armour*, though, the district court had held that the "[u]sual hours for sleep and for eating . . . would not be counted" as hours worked, *id.* at 129, and the Supreme Court did not comment on the exclusion of meal periods from the otherwise compensable downtime in that case.

In conclusion, we do not find in the regulations or caselaw analyzing general rules on travel time any bar to providing for a noncompensable meal period on airplane flights. We now examine the authorities specifically on meal periods to determine Akal's compliance with them.

II.     Bona fide *meal period*

Akal argues that one hour of these return flights was noncompensable because it was a *bona fide* meal period. Compensation for all hours worked is the rule, but the regulations provide that an unpaid meal break can occur during the workday when certain conditions are met.

The most relevant regulation is this:

> *Bona fide* meal periods are not worktime. *Bona fide* meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a *bona fide* meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.

No. 20-30306

29 C.F.R. § 785.19(a). The regulation also provides that employees do not need to be granted permission to leave the premises for a meal period to occur. § 785.19(b).

Since 1956, Section 785.19(a) has provided that "[t]he employee must be completely relieved from duty for the purposes of eating regular meals." *See Roy v. Cnty. of Lexington*, 141 F.3d 533, 544 (4th Cir. 1998) (noting the relevant language was promulgated in 1956). Some circuits have interpreted this language as creating a higher standard than the widely used "predominant-benefit test." *See, e.g.*, *Busk v. Integrity Staffing Sols., Inc.*, 713 F.3d 525, 531–32 n.4 (9th Cir. 2013), *rev'd on other grounds*, 574 U.S. 27 (2014). In 1998, the Fourth Circuit concluded that the DOL regulation's "completely relieved of duty" language did not conflict with the predominant-benefit test because the Secretary of Labor approvingly cited a Sixth Circuit case that applied the "'predominantly for the employer's benefit' standard." *Roy*, 141 F.3d at 544 (quoting *F.W. Stock & Sons, Inc. v. Thompson*, 194 F.2d 493, 496 (6th Cir. 1952)). The predominant-benefit test thus survived the language that the DOL implemented in 1956. We adopted the predominant-benefit test in 1998, joining, at that time, "most circuit courts." *Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259, 264 n.16 (5th Cir. 1998). We will explain our considerations under that test later.

The Ninth and the Eleventh Circuits may review under a heightened standard. The Ninth Circuit seemingly determines, strictly as a matter of fact, whether the employee has been "completely relieved of duty." *See Busk*, 713 F.3d at 531–32. A panel of that court later applied that test to the ASOs and mealtimes during flights, then found in favor of Akal because the employee had at least one hour of free time during the return flights. *Alonzo v. Akal Sec. Inc.*, 807 F. App'x 718, 720 (9th Cir. 2020). The Eleventh Circuit has held that "the essential consideration . . . is whether the employees are in fact relieved from work for the purpose of eating a regularly scheduled

No. 20-30306

meal." *Kohlheim v. Glynn Cnty.*, 915 F.2d 1473, 1477 (11th Cir. 1990).  It has also affirmed a district court's application of the predominant-benefit test. *Avery v. City of Talladega*, 24 F.3d 1337, 1346–47 (11th Cir. 1994).  In January 2021, the Eleventh Circuit heard arguments on another ASO challenge to the meal-period policy.  *Gelber v. Akal Sec., Inc.*, No. 18-14496 (11th Cir. argued Jan. 15, 2021).

The Third Circuit has reasoned that the various Ninth Circuit and Eleventh Circuit precedents did not actually adopt the completely-relieved-of-duty test, concluding that neither court actually applied that test.  *Babcock v. Butler Cnty.*, 806 F.3d 153, 156 (3d Cir. 2015).  We mention this view only as part of the context for considering the differences in resolutions among the circuits' review of factually similar cases.   Regardless of the proper understanding of the other circuits' precedents, we are bound by our own.

We apply the predominant-benefit test.  *Naylor v. Securiguard, Inc.*, 801 F.3d 501, 506 (5th Cir. 2015); *Bernard*, 154 F.3d at 264 n.16 (citing five other circuits as approving of this approach at the time).  When we apply that test, we consider whether the employee or the employer received the predominant benefit from the meal break.  *Naylor*, 801 F.3d at 506.  Factors relevant for this consideration include:

> [1] whether the employees are subject to real limitations on their personal freedom which inure to the benefit of the employer; [2] whether restrictions are placed on the employee's activities during those times, such as whether or not the employee may leave the work site if he chooses; [3] whether the employee remains responsible for substantial work-related duties; and [4] how frequently the time is actually interrupted by work-related duties.

*Bernard*, 154 F.3d at 265.

No. 20-30306

This language originated as a quote from a jury instruction. *Id.* Judge Wisdom for our court concluded that this "language used by the district court accurately reflects the standard and factors employed by the courts when applying the predominant benefit test." *Id.* at 266. We continue to agree with the district court in *Bernard* when it prefaced its instruction with the phrase that these were "[a]mong the factors" to consider. *Id.* at 265 (quoting the jury instruction). There may be other considerations that also would be relevant. We do not see any others in this case, though.

Before analyzing those factors, we briefly address two preliminary matters. First, the parties disagree on who bears the burden of proof. This issue need not be resolved because even if Akal carries the burden of proof, it succeeded in carrying that burden.[5] Second, the ASOs posit that this court's test is so fact intensive as to preclude granting summary judgment. Though we acknowledge that the test certainly requires a review of the facts, that alone would not prevent application of the test at the summary-judgment stage. *See, e.g.*, *Naylor*, 801 F.3d at 508 (affirming, in part, summary judgment in favor of an employer because the mandatory travel time was too *de minimis* to interfere with certain employees' lunch break). As with summary judgments generally, if there are no genuine disputes of material fact, summary judgment is appropriate. An example of affirming summary judgment in a meal-period case is in the nonprecedential decision of *Alvarez v. City of El Paso*, 32 F. App'x 126, 2002 WL 334630, at *1 (5th Cir. 2002). We conclude, as implicitly the *Alvarez* panel must have as well, that there is

---

[5] Fifth Circuit precedent clearly places the burden on the employer. *See, e.g.*, *Naylor*, 801 F.3d at 508. Akal's argument is that intervening Supreme Court authority requires us to "modernize" the placement of the burden. *See Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018). We do not resolve whether revising this circuit's position is proper, as we determine Akal succeeded in carrying the burden.

No. 20-30306

nothing inherent in the predominant-benefit test's factors that prevents summary judgment in an appropriate case.

The preliminary issues resolved, we now apply the predominant-benefit test.  The overall goal of the analysis is to determine "whether the employee can use the time effectively for his or her own purposes." *Bernard*, 154 F.3d at 266 (quoting *Henson v. Pulaski Cnty. Sheriff Dep't*, 6 F.3d 531, 534 (8th Cir. 1993)).  We will return to the initial factor in the analysis, "whether the employees are subject to real limitations on their personal freedom which inure to the benefit of the employer," after considering the categories of limitations that the other factors describe.  *See id.*

The second factor examines restrictions on the employee's activities during the meal breaks, including whether they may leave the work site.  *See id.*  Here, the ASOs are prevented from leaving the worksite during the mandatory meal break and may not use their cellular phones or other handheld devices that require internet access.  The ASOs contrast these restrictions to cases where the employees went to break rooms or otherwise left their "workspaces" to enjoy their meals.

Akal's restrictions, of course, are inherent to working on an airplane rather than established at the discretion of the employer.  At least one regulation, previously discussed, applies to those whose job requires "working while riding [on an airplane], except during *bona fide* meal periods."  29 C.F.R. § 785.41.  The only issue as to that regulation, which we already mentioned, is whether the ASOs are within the class of assistants and helpers to the pilot that the regulation contemplates.  Regardless, a noncompensable meal period — even if movement is confined to an airplane or other mode of transportation — is recognized by that regulation.  Even beyond the restrictions that arise from being in an airplane, the regulations more generally do not require that the employee be allowed to leave the place

No. 20-30306

of work to enjoy a *bona fide* meal period.   § 785.19(b).   Many cases acknowledge that some limitations on an employee are acceptable during a meal period, such as requiring them to remain in uniform, on the jobsite, and available to respond to emergencies if needed.   *See, e.g.*, *Ruffin v. MotorCity Casino*, 775 F.3d 807, 812–15 (6th Cir. 2015).

We conclude that the effect of any limitations on the ASOs' activities imposed during an ostensible meal period must be analyzed in the context of the relevant workplace.   These restrictions on the ASOs' activities do not undercut the validity of the meal break.

We will consider the final two factors together: "whether the employee remains responsible for substantial work-related duties; and how frequently the time is actually interrupted by work-related duties." *Bernard*, 154 F.3d at 265.   Any infrequent interruptions do not invalidate the policy of a noncompensable meal period.   The Sixth Circuit has held, for example, that regularly having to monitor a radio during meal periods and responding if called did not transform the meal period into compensable worktime. *Ruffin*, 775 F.3d at 812.[6]   We agree with that analysis.   The record here shows that the ASOs almost always had at least one hour on the return flights when they had no work-related duties.   We discover deposition testimony by one ASO that she occasionally had to work during a break on these empty return flights, but there was no evidence of other employees who had to work during a meal break or of any substantial or frequent interruptions during an announced meal period.   Other employees testified that on return flights they received at least one hour of free time to spend as they pleased.

---

[6] We note that the Sixth Circuit places the burden of proof on the employee, whereas we place the burden of proof on the employer.   *Compare Ruffin*, 775 F.3d at 811, *with Bernard*, 154 F.3d at 265.   Regardless, we find the analysis of the limitations discussed in *Ruffin* persuasive.

No. 20-30306

We now return to the first factor.  In this context, no benefit to Akal (not counting the monetary one) has been shown arising from the inevitable restrictions on mobility or the prohibitions on the use of technological devices when confined to the airplane.  The only limitations were those inherent to being on an airplane, and they did not inure to Akal's benefit.  As to the application of the policy, the ASOs have not presented evidence that they did not regularly receive this one hour of personal time on every return flight, free from work-related duties.  We agree with the district court that the ASOs "fail to identify any work-related duties they claim interfered with the *bona fide* meal periods."  Thus, each "employee can use the time effectively for his or her own purposes." *Bernard*, 154 F.3d at 266.

We conclude that the ASOs were the ones who predominantly benefited from the one-hour meal periods.

Beyond making arguments about the predominant-benefit test, the ASOs also argue that the meals needed to be regularly scheduled.[7]  The ASOs rely on one of our decisions in which this sentence appears: "[t]he meal period must be scheduled, occur at a regular time, and normally be thirty minutes or more.  29 C.F.R. § 785.19."  *Lee v. Coahoma Cnty.*, 937 F.2d 220, 225 (5th Cir. 1991).  Despite that language, the *Lee* court held that the law enforcement agency's "catch as catch can" meal periods were properly classified as *bona fide* and exempt from compensation.  *Id.*  A close look at the sentence in *Lee* about regular mealtimes reveals that it follows two sentences that were explicitly about what the employees were claiming, and

---

[7] Another ASO argument is that the ostensible mealtime did not actually have any "connection to eating."  We do not see any requirement that an employee actually eat a meal, only that sufficient time for a meal is provided.  Certainly, a mandatory, noncompensable meal period cannot be unreasonably long.  One hour in these circumstances was a reasonable amount of time.  We do not further analyze the length of a valid meal break.

No. 20-30306

it precedes one final sentence of explanation about the employees' arguments. *Id.* In light of the holding in *Lee*, which did not require a set schedule for meals, the court when mentioning regularity of meals must have simply been continuing its explanation of the employees' position on appeal.[8] The Tenth Circuit has concluded similarly. *See Bates v. Dep't of Corr. of State of Kan.*, 81 F.3d 1008, 1011–12 (10th Cir. 1996). Significantly, this court has not suggested since *Lee* that a regular schedule for meals is required.

Finally, Akal's failure to record when each ASO took a meal break does not alter our conclusion. An automatic deduction such as was done here will not itself violate the FLSA. *See White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 873 (6th Cir. 2012). The ASOs concede that "what matters is whether the employees are given *bona fide* meal breaks under the Act."

These one-hour breaks satisfy the regulation and this circuit's predominant-benefit test.

AFFIRMED.

---

[8] The language of Section 785.19(a) further supports this interpretation, as the regulation states only that "[t]he employee must be completely relieved from duty for the purposes of eating regular meals," not regularly *scheduled* ones.

Print Form

**UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT**

**BILL OF COSTS**

**NOTE: The Bill of Costs is due in this office *within 14 days from the date of the opinion, See* FED. R. APP. P. & 5TH Cir. R.39. Untimely bills of costs must be accompanied by a separate motion to file out of time, which the court may deny.**

Hayward Dean, et al.     **v.** Akal Security, Incorporated     No. 20-30306

The Clerk is requested to tax the following costs against: Hayward Dean, et al.

| COSTS TAXABLE UNDER Fed. R. App. P. & 5th Cir. R. 39 | REQUESTED | | | | ALLOWED (If different from amount requested) | | | |
|---|---|---|---|---|---|---|---|---|
| | No. of Copies | Pages Per Copy | Cost per Page* | Total Cost | No. of Documents | Pages per Document | Cost per Page* | Total Cost |
| Docket Fee | | | | | | | | |
| Appendix or Record Excerpts | | | | | | | | |
| Appellant's Brief | | | | | | | | |
| Appellee's Brief | 7 | 77 | .10 | 53.90 | 7 | 77 | .10 | 53.90 |
| Appellant's Reply Brief | | | | | | | | |
| Other: Binding | 7 | n/a | 5.0 | ~~35.00~~ | 7 | | 1.50 | 10.50 |
| | | | Total $ | ~~88.90~~ | | Costs are taxed in the amount of $ | 64.40 | |

Costs are hereby taxed in the amount of $ 64.40

State of _____
County of _____

I Valerie L. Hooker _____, do hereby swear under penalty of perjury that the services for which fees have been charged were incurred in this action and that the services for which fees have been charged were actually and necessarily performed. A copy of this Bill of Costs was this day mailed to opposing counsel, with postage fully prepaid thereon. This 6th day of July , 2021 .

/s/ Valerie L. Hooker

(Signature)

Attorney for Akal Security, Incorporated

this 14th day of July ,

LYLE W. CAYCE, CLERK

By _____
                 **Deputy Clerk**

*SEE REVERSE SIDE FOR RULES GOVERNING TAXATION OF COSTS

# FIFTH CIRCUIT RULE 39

**39.1 Taxable Rates.** *The cost of reproducing necessary copies of the brief, appendices, or record excerpts shall be taxed at a rate not higher than $0.15 per page, including cover, index, and internal pages, for any for of reproduction costs. The cost of the binding required by 5^{TH} CIR. R. 32.2.3 that mandates that briefs must lie reasonably flat when open shall be a taxable cost but not limited to the foregoing rate. This rate is intended to approximate the current cost of the most economical acceptable method of reproduction generally available; and the clerk shall, at reasonable intervals, examine and review it to reflect current rates. Taxable costs will be authorized for up to 15 copies for a brief and 10 copies of an appendix or record excerpts, unless the clerk gives advance approval for additional copies.*

**39.2 Nonrecovery of Mailing and Commercial Delivery Service Costs.** *Mailing and commercial delivery fees incurred in transmitting briefs are not recoverable as taxable costs.*

**39.3 Time for Filing Bills of Costs.** *The clerk must receive bills of costs and any objections within the times set forth in FED. R. APP. P. 39(D). See 5TH CIR. R. 26.1.*

## FED. R. APP. P. 39. COSTS

**(a) *Against Whom Assessed.*** The following rules apply unless the law provides or the court orders otherwise;

(1) if an appeal is dismissed, costs are taxed against the appellant, unless the parties agree otherwise;

(2) if a judgment is affirmed, costs are taxed against the appellant;

(3) if a judgment is reversed, costs are taxed against the appellee;

(4) if a judgment is affirmed in part, reversed in part, modified, or vacated, costs are taxed only as the court orders.

**(b) *Costs For and Against the United States.*** Costs for or against the United States, its agency or officer will be assessed under Rule 39(a) only if authorized by law.

**(c) *Costs of Copies*** Each court of appeals must, by local rule, fix the maximum rate for taxing the cost of producing necessary copies of a brief or appendix, or copies of records authorized by rule 30(f). The rate must not exceed that generally charged for such work in the area where the clerk's office is located and should encourage economical methods of copying.

**(d) *Bill of costs: Objections; Insertion in Mandate.***

(1) A party who wants costs taxed must – within 14 days after entry of judgment – file with the circuit clerk, with proof of service, an itemized and verified bill of costs.

(2) Objections must be filed within 14 days after service of the bill of costs, unless the court extends the time.

(3) The clerk must prepare and certify an itemized statement of costs for insertion in the mandate, but issuance of the mandate must not be delayed for taxing costs. If the mandate issues before costs are finally determined, the district clerk must – upon the circuit clerk's request – add the statement of costs, or any amendment of it, to the mandate.

**(e) *Costs of Appeal Taxable in the District Court.*** The following costs on appeal are taxable in the district court for the benefit of the party entitled to costs under this rule:

(1) the preparation and transmission of the record;

(2) the reporter's transcript, if needed to determine the appeal;

(3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and

(4) the fee for filing the notice of appeal.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **BILL OF COSTS**
with the Clerk of the Court for the United States Court of Appeals for the Fifth
Circuit by using the appellate CM/ECF system on July 6, 2021.

I certify that all participants in the case are registered CM/ECF users and that
service will be accomplished by the appellate CM/ECF system.

JACKSON LEWIS P.C.

Dated: July 6, 2021                     /s/ Valerie L. Hooker
                                        Charles F. Seemann III
                                        Jenna Rinehart Rassif
                                        Tony H. McGrath
                                        Valerie L. Hooker
                                        *Attorneys for Defendant-Appellee*